## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ANDRA "ANA" CHERI ROSE, TIFFANY GRAY a/k/a TIFFANY TOTH, JANET GUZMAN, IESHA MARIE CRESPO, BRENDA GEIGER, KATARINA VAN DERHAM, KEELEY REBECCA HAZELL, SANDRA VALENCIA, GALLIENNE NABILA, STEPHANIE RAO, SARA UNDERWOOD and YODIT YEMANE a/k/a JODIE JOE, | Case No. |
| Plaintiffs, | |
| - against - | |
| BLUE HOOKAH LOUNGE LLC d/b/a BLUE HOOKAH LOUNGE a/k/a BLUE HOOKAH and FREDDY CARAVAJAL, | |
| Defendants. | |

Plaintiffs ANDRA "ANA" CHERI ROSE, TIFFANY GRAY a/k/a TIFFANY TOTH, JANET GUZMAN, IESHA MARIE CRESPO, BRENDA GEIGER, KATARINA VAN DERHAM, KEELEY REBECCA HAZELL, SANDRA VALENCIA, GALLIENNE NABILA, STEPHANIE RAO, SARA UNDERWOOD and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against BLUE HOOKAH LOUNGE LLC, d/b/a BLUE HOOKAH LOUNGE d/b/a BLUE HOOKAH and FREDDY CARAVAJAL (collectively, "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Blue Hookah Lounge d/b/a Blue Hookah located at 3669 S Mendenhall Rd, Memphis, Tennessee 38115 (**hereinafter referred to as the "Night Club" or "Blue Hookah"**).

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act"; d) Common Law Right of Publicity; e) Violation of the Tennessee Consumer Protection Act of 1977, T.C.A. 47-18-101 to 47-18-570; f) Defamation; g) Negligence/Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant BLUE HOOKAH LOUNGE LLC, is a limited liability company formed under the laws of the state of Tennessee, with its principal place of business located at 3669 S Mendenhall Rd, Memphis, Tennessee, 38115. Upon information and belief, BLUE HOOKAH LOUNGE LLC operates Blue Hookah Lounge, which is located at 3669 S Mendenhall Rd, Memphis, Tennessee 38115..

8.      According to publicly available records, Defendant Freddy Caravajal, is an individual operating under the laws of Tennessee, who is an Owner and/or CEO of BLUE HOOKAH LOUNGE LLC. Upon information and belief, Freddy Caravajal can be located at 3669 S Mendenhall Rd, Memphis, Tennessee 38115.

9.      Venue is proper in the United States District Court for the Western District of Tennessee because Defendants' principal place of business is located in Shelby County, Tennessee.

10.     A significant portion of the alleged causes of action arose and accrued in Memphis, Tennessee and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Memphis, Tennessee.

## PARTIES

*Plaintiffs*

11.     Plaintiff Andra "Ana" Cheri Rose ("Rose") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Tiffany Toth a/k/a Tiffany Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

13.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

15.     Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

16.     Plaintiff Katarina Van Derham ("Derham") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Keeley Rebecca Hazell ("Hazell") is a well-known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Colombia.

19.     Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident

of Los Angeles County, California.

21.    Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Jefferson County, Washington.

22.    Plaintiff Yodit Yemane a/k/a ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

23.    Defendant, BLUE HOOKAH LOUNGE LLC, is a limited liability company formed under the laws of the state of Tennessee and registered to conduct business in Tennessee. During times relevant to this action, BLUE HOOKAH LOUNGE LLC operated Blue Hookah Lounge.

24.     According to publicly available records, Freddy Caravajal, in their capacity as principal, owner and/or CEO of BLUE HOOKAH LOUNGE LLC, maintained operational control over Blue Hookah Lounge including all advertising relating thereto.

25.    Service of process may be perfected upon Defendant BLUE HOOKAH LOUNGE by serving the registered agent for service of process, Freddy Caravajal, who can be located at 5793 Steffani Dr, Southaven, MS 38671.

## FACTUAL ALLEGATIONS

26.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

27.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

28.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or

affiliated with Defendants.

29.    In the case of each Plaintiff, this apparent claim was false.

30.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

31.    No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

32.    Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

33.    Rose is a published model with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz. She was featured as a Maxim Instagram Girl of the Week, and was also Playboy's October 2015 Playmate of the Month. She has made appearances in numerous TV series, including Booty Boot Camp, Nuclear Family, Playmate Playback and many more. She is also the owner of Change Fate Active formerly known as Cheri Fit activewear, which sells fit apparel. Cheri currently has over 12.5 million followers on Instagram, over 31,000 followers on Twitter, and over 105,000 followers on Facebook.

34.    That we know of, Rose is depicted in the photo in Exhibit "A" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Rose was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

35.    Rose has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

will continue to suffer, damages as a result of same.

36.     Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368.7K X (formerly known as Twitter) followers.[1]

37.     That we know of, Gray is depicted in the photo in Exhibit "B" to promote Blue Hookah on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Gray was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

38.     Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

40.     That we know of, Guzman is depicted in the photo in Exhibit "C" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah

41.     Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

43.     That we know of, Crespo is depicted in the photo in Exhibit "D" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Crespo was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

44.     Crespo has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson.

She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

46.    That we know of, Geiger is depicted in the photo in Exhibit "E" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Geiger was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

47.    Geiger has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.    Derham is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, VIVA GLAM. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000 Facebook followers.

49.    That we know of, Derham is depicted in the photo in Exhibit "F" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Derham

was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

50.    Derham has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.    Hazell is an English model, musician, singer and actress. Hazell became one of Britain's most successful glamour models, working with brands such as Page 3, FHM, Loaded, Nuts and Zoo Weekly. She has also made numerous television appearances and has appeared in films such as Horrible Bosses 2. At 17, she competed in The Daily Star's "Search for a Beach Babe" contest and won she then went on to study fashion at Lewisham College. She entered The Sun's Page 3 Idol competition and was chosen as winner of £10,000 worth of "sexy clothes", "a one-year membership of the Rex cinema and bar", and a one-year exclusive glamour modelling contract with The Sun in December of 2004.Hazell has been regularly featured in Nuts and Zoo. She has been on the cover of The Sun's 2006 and 2007 Page 3 calendars, in addition to her own wall calendars; the 2007 edition selling 30,000 copies in its first few days of release. In June 2005, Hazell appeared on the front cover of Maxim magazine, and on the front cover of FHM in September. In January 2006, she appeared on the front cover of Loaded magazine. In 2007, Hazell and IT expert Gary Schwartz co-presented Byte Me TV, an online program that tried to explain technology in an easy to-understand way. In 2008, Hazell appeared in the BBC Three documentary Page Three Teens. Hazell released a pop music single called "Voyeur" and she along with agent Ginny Mettrick co-founded modelling agency Muse Management. In 2009, according to the August edition of Loaded, Peta Todd stated that Hazell had given modelling up to pursue a career in acting and that she was in America receiving acting lessons. Her last appearance on Page 3 of The Sun was on 30 September 2009. In 2010, Hazell had her first lead role in the short film Venus and the Sun, a comedic retelling of Ovid's myth, Venus and Adonis. Hazell had a small role in the film Like Crazy, which won both the Grand and a Special Jury Prize at the 2011 Sundance Film

Festival. In 2012, Hazell played a supporting role in the British gangster movie St George's Day, which was directed by Frank Harper. In January 2013, Hazell made another return to modelling by appearing in FHM. Hazell was the face of Sony Computer Entertainment Europe's Formula One 06 video game for PlayStation 2, PlayStation Portable, and F1 CE for PlayStation 3. She is currently the face of MotorStorm: Pacific Rift for PlayStation 3. Hazell had a small role in the full-length version of Cashback, playing "Frozen Girl in Sainsbury's".  In 2015, Hazell landed a role in E!'s first scripted drama, The Royals, as "Violet". Hazell starred in the 2013 comedy film Awful Nice and the 2015 horror film Whispers. She also appeared in the 2016 short film Queen of Hearts. She appeared in the 2018 TV Movie Vows of Deceit. Hazell was hailed by Conservative leader David Cameron in December 2006 as an "environmental hero" for her campaigns in The Sun, giving environmental tips such as turning lights off during the day. She was named alongside the likes of David Attenborough, Prince Charles, and Arnold Schwarzenegger in the Tories' list. Hazell backed a major breast cancer awareness campaign for Breakthrough Breast Cancer. The campaign, called TALK TLC, aimed to promote Breakthrough's breast health message about the need to be aware of the signs and symptoms of breast cancer. Hazell has also signed up to take part in the Breakthrough Generations Study consisting of 100,000 women and spanning 40 years; the study aims to be the largest and most comprehensive of its kind.

52.    Exhibit "G" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Hazell was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

53.    Hazell has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.    Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home

country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151,000 Instagram followers and over 72,300 X (formerly known as Twitter) followers.

55.     That we know of, Valencia is depicted in the photo in Exhibit "H" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Valencia was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

56.     Valencia has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57.     Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

58.     That we know of, Nabila is depicted in the photo in Exhibit "I" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

59.     Nabila has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60.     Rao who is originally from Miami, FL currently resides in Los Angeles and is an

influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

61. That we know of, Rao is depicted in the photo in Exhibit "J" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

62. Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

63. Underwood first appeared in Playboy in the pictorial "The Girls of the Pac 10" in the October 2005 issue, in which she also graced the cover. She was the Playmate of the Month in the July 2006 issue of the famous men's magazine and was named Playmate of the Year in 2007. Underwood has been featured in many Playboy videos and has appeared as herself in the films The House Bunny (2008) and Miss March (2009), as well as in episodes of reality TV series such as Kendra (2009), The Girls Next Door (2005), and Bridget's Sexiest Beaches (2009). She has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's Attack of the Show. She is the co-owner of Sugar Taco and has her YouTube channel, Cabinland, with 1.05 million subscribers. Underwood also has 8.6 million followers on Instagram, 1.4 million followers on TikTok, and 1.3 million followers on X (formerly known as Twitter).

64. That we know of, Underwood is depicted in the photo in Exhibit "A"" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Underwood was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or

that she was otherwise associated or affiliated with Blue Hookah.

65.    Underwood has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

66.    Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry.

67.    That we know of, Yemane is depicted in the photo in Exhibit "L" to promote Blue Hookah on its Facebook page. This Image was intentionally altered to make it appear that Yemane was either an employee working at Blue Hookah, that she endorsed Blue Hookah, or that she was otherwise associated or affiliated with Blue Hookah.

68.    Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

69.    Defendants operate (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

70.    Defendants own, operate, and control Blue Hookah's social media accounts, including its Facebook, Twitter, and Instagram accounts.

71.    Defendants used Blue Hookah's Facebook, Twitter, and Instagram accounts to

promote Blue Hookah's , and to attract patrons.

72.    Defendants did this for their own commercial and financial benefit.

73.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Blue Hookah, endorsed Blue Hookah, or was otherwise associated or affiliated with Blue Hookah.

74.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Blue Hookah to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

75.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Blue Hookah, and at no point have any of the Plaintiffs ever endorsed Blue Hookah or otherwise been affiliated or associated with Blue Hookah.

76.    All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

77.    Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

78.    Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

79.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

80.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the

client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

81.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

82.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Blue Hookah.

83.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

84.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Blue Hookah.

85.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

86.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

87.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Blue Hookah's website, Twitter, Facebook, or Instagram accounts.

88.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

89.    Upon information and belief, the above acts of the Defendants were fraudulent, intentional and/or malicious and entitle Plaintiffs to punitive damages.


**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

90.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

91.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein.

92.     Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

93.     Thus, this was done in furtherance of Defendants' commercial benefit.

94.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggests the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

95.     Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

96.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

97.     Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

98.     Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

99.     Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

100.     Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

101.     As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

102.     Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

103.     Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

104.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at

trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)

105.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

106.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

107.    Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

108.    Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

109.    Defendants' unauthorized use of Plaintiffs'' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and

market Defendants' businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

110.    Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant establishment events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

111.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendant establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

112.    Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

113.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

114.    Defendants knew or should have known that their unauthorized use of Plaintiffs'
image, likeness and/or identity would cause consumer confusion as described in this Complaint.

115.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as
described herein violates 15 U.S.C. §1125(a) and was wrongful.

116.    Defendants' wrongful conduct as described herein was willful.

117.    As such, the present case is an exceptional case warranting an award of
reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

118.    Defendants had actual or constructive knowledge of the wrongfulness of their
conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with
actual or constructive knowledge of the high probability that injury or damage would result to
Plaintiffs.

119.    The method and manner in which Defendants used the image of Plaintiffs further
evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not
consent to Defendants' use of their image to advertise Defendants' businesses.

120.    Defendants have caused irreparable harm to Plaintiffs, their reputation and brand
by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

121.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity
directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be
determined at trial.


**THIRD CAUSE OF ACTION**
**(Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-**
**1101 to 47-25-1108 "TRPA" or "ELVIS Act")**

122.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above,
and incorporate the same by reference as though fully set forth herein.

123.    Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the
exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her
image is readily identifiable in each photograph.

124. Plaintiffs' Images have not been copyrighted under federal law.

125. Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act" the unauthorized use of a person's image or likeness for purposes of advertising goods or services or fundraising/soliciting donations, among other purposes is unlawful.

126. Defendants misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

127. Defendants' use and publication of Plaintiffs' Images as set forth in the exhibits attached to this complaint was to advertise their establishment was for the purpose of advertising goods or services.

128. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

129. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

130. Defendants published, performed, distributed, transmitted or otherwise made available to the public each Plaintiffs' image and likeness with knowledge that the use was unauthorized.

131. Defendants knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

132. Defendants' use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

133.    Defendants never obtained Plaintiffs' consent for the use of their images and likenesses.

134.    Defendants' use of each Plaintiffs' photographs and likenesses was willful and deliberate.

135.    As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

136.    As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

137.    Under the Elvis Act, Plaintiffs are entitled to injunctive relief, destruction of any materials created in violation of the law; actual damages, plus any profits that are attributable to the violation.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Publicity)

138.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

139.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

140.    Defendants misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

141.    Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

142.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness

on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

143.    Plaintiffs are  further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

144.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

145.    Upon information and belief, Defendants' use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants.

146.    At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

147.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

148.    At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their image and likeness.

149.    Plaintiffs have been damaged in amounts to be proved at trial.

**FIFTH CAUSE OF ACTION**
**(Violation of the Tennessee Consumer Protection Act of 1977,**
**T.C.A. 47-18-101 to 47-18-570)**

150.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

151.    Defendants operated their website and social media accounts in order to promote Defendants' establishment, to attract clientele thereto, and to thereby generate revenue for Defendants.

152.    As such, Defendants' operation of the website and social media accounts, and their

publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Tennessee.

153.    Defendants publication and use Plaintiffs' image and likeness was in a manner that Plaintiffs gave consent for the use of their Images, and/or created the false impression that Plaintiffs were either strippers working at Defendants' establishment, endorsed the same, or were otherwise affiliated, associated, or connected with Defendants.

154.    As such, Defendants' intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendants.

155.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Tennessee.

156.    Defendants' advertising practices offends the public policy of Tennessee insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

157.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

158.    Defendants advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

159.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

160.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' image and likeness on their website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

161.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

162.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

163.    As detailed throughout this Complaint, Defendants have published and altered the image and likeness of Plaintiffs in order to promote their establishment to the general public and potential clientele.

164.    Defendants' publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

165.    None of these representations were true.

166.    In publishing Plaintiffs' Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

167.    Defendants were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

168.    In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew – or reasonably should have known – that  Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

169.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

170.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation

under Tennessee law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

171.    Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

172.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which Defendants' publication of the image and likeness support.

173.    Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because, insofar as said publication falsely portrays each of the Plaintiffs as Defendants' employee, it imputes unchastity to her.

174.    Defendants' publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SEVENTH CAUSE OF ACTION**
**(Negligence/Respondeat Superior)**

175.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

176.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional

and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

177.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

178.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

179.    Similarly, Defendants further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendants.

180.    Defendants breached their duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

181.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Tennessee law, were not violated. Defendants breached their duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

182.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

183.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

**(Conversion)**

184.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

185.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

186.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain.

187.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

188.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

189.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Defendants' establishment to the general public and potential clientele.

190.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendants.

191.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

192.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

193.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

194.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

195.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

196.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

197.     Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

198.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

199.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their establishment, Defendants have not compensated Plaintiffs.

200.     Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Defendants' Night Club;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and T.C.A 47-18-101, *et seq.*;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action

pursuant to the Lanham Act, 15 U.S.C.§ 1117 and T.C.A 47-18-101, *et seq*.;

(e)  For all damages available to Plaintiffs under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 ("TRPA" or "ELVIS Act");

(f)  For all damages available to Plaintiffs under Tennessee Consumer Protection Act of 1977,T.C.A. 47-18-101 to 47-18-570;

(g) For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**/s/ Joe Bednarz, Jr.**
**JOE BEDNARZ, JR., #018540**
**BEDNARZ & BEDNARZ**
660 East Main Street
Hendersonville, TN 37075
(615) 256-0100
*Attorneys for Plaintiffs*